[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11518
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 30, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A098-857-947
A098-857-948

ANA MILENA JARAMILLO OCAMPO,
ALEJANDRO GIRALDO GARCIA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 30, 2009)

Before BIRCH, CARNES  and WILSON, Circuit Judges.

PER CURIAM:

Ana Milena Jaramillo Ocampo ("Ocampo") and her husband Alejandro

Giraldo Garcia ("Garcia") petition for review of the Board of Immigration Appeals' ("BIA") decision adopting and affirming the Immigration Judge's ("IJ") order denying asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). The BIA affirmed the IJ's decision denying Ocampo's petition without opinion. We find that Ocampo did not exhaust her administrative remedies by arguing a political opinion theory of persecution during the administrative proceedings and therefore DENY the petition for review.

## I. BACKGROUND

Ocampo, a native and citizen of Colombia, arrived in the United States on or about 25 August 2004, as a non-immigrant B-2 visitor with authorization to remain until 24 February 2005. Administrative Record ["AR"] at 247. Her husband, Garcia, also a native and citizen of Colombia, entered the United States on or about 17 May 2001, as a non-immigrant B-2 visitor with authorization to remain until 24 February 2005. Id. at 262. The Department of Homeland Security ("DHS") served both parties with a Notice to Appear on 7 July 2005, alleging that they remained in the United States beyond 24 February 2005. Id. at 247, 262. The parties conceded removability at a hearing on 14 March 2006. Id. at 62. Since the cases were

2

consolidated, id. at 55, all references to Ocampo also pertain to Garcia.

On 24 May 2005, Ocampo completed an application for asylum and withholding of removal based on religion.[1] Id. at 193. According to Ocampo, Revolutionary Armed Forces of Columbia ("FARC") members sentenced her to death based on her religion, Catholicism, and her membership in "Verbum Dei," a missionary Catholic community. Id. at 199. In particular, Ocampo described her background and devotion to the Catholic faith and explained that she started a religious group at her school, the Technological University of Pereira. Id. In February 2004, two students began attending Ocampo's religious group and insisted that she run for the university's student council. Id. Two months later, they approached Ocampo in the school cafeteria and told her that they were FARC members and wanted her to join the student council "to train [her] in political subjects of the FARC and to join the political committee of the urban militia of Pereira." Id. at 200. When Ocampo refused to join the student council, and the FARC, due to her religion, the two students stopped attending her religious group, continued to press her to join the FARC, and thereafter threatened her. Id.

In June 2004, the two students approached Ocampo in the university parking lot after she finished a night class. Id. The students again pressed her about

---

[1] Ocampo did not initially apply for CAT relief but this claim was added at a 14 March 2006 hearing. AR at 62.

joining the student council because the elections were soon, but she again refused to join both the student council and the FARC. Id. The students then escorted her to a dark area of the parking lot, held a gun to her head, and told her that she needed to join them or die. Id. The students commanded her to continue to hold her religious group meetings so she would not "lose the confidence of the students," run for student council, and investigate students to discover army, police, or other paramilitary infiltrators. Id. at 201.

After this encounter, Ocampo secretly traveled from Pereira to Villavicencio, where her brother and sister lived. Id. While in Villavicencio, an unnamed female FARC member telephoned Ocampo and told her she would die for not doing as the FARC commanded, and that there was no escape from the FARC because she was a military objective. Id. Ocampo then came to the United States "to protect [her] life." Id.

Ocampo's asylum application included the following: (1) her passport and other identifying documents, (2) a letter from her brother, Pedro Antonio Jaramillo Ocampo, who was a Catholic priest, and (3) letters from other religious leaders in Colombia. Id. at 202-13, 216, 218. At Ocampo's 7 May 2008 removal hearing, the parties entered additional documents into evidence: (1) the 2007 country report for Colombia, (2) two January 2008 letters from Ocampo's priests certifying her membership in a Lilburn, GA, Catholic church, (3) an October 2006 letter from

4

Ocampo's father, (4) reports on the January 2006 death of Ocampo's brother from a traffic accident, (5) hospital admissions paperwork for Ocampo's father, (6) internet articles relating to the FARC, and (7) the 2003 international religious freedom report for Colombia. Id. at 87, 114, 116, 119, 122, 128, 137, 140, 148-52, 154-69, 180-88. The religious freedom report indicated that illegal armed groups often targeted religious leaders and practitioners for political, not religious, reasons. Id. at 182.

At her removal hearing, Ocampo testified about her encounters with the FARC and restated the incidents described in her asylum application. Id. at 73-77. She also described two events that happened to her family members since she left Colombia. First, her brother died in a traffic accident which, although she had no proof, Ocampo thought the FARC was responsible for. Id. at 78, 81. Second, Ocampo believed guerillas were responsible for drugging her father with Scopolamine and stealing his car. Id. at 78-79. According to the IJ, however, Scopolamine is used to dilate the eyes, and Ocampo testified that her father wore glasses and went to the eye doctor that same day. Id. at 19-20, 79. On cross examination, the government elicited testimony confirming that neither Ocampo nor her father were ever physically harmed, that she had no proof the FARC was responsible for her brother's death, and that the remaining members of her family never had any issues with the FARC. Id. at 81-82.

The IJ found Ocampo credible, but nonetheless denied her application for asylum, withholding of removal, and CAT relief. Id. at 17, 23. First, the IJ concluded that Ocampo's encounters with FARC members did not amount to persecution. Id. at 20. The incidents consisted "solely of threats that never went beyond more than a very short term kidnaping and communication to her in June of 2005." Id. Relying on Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226 (11th Cir. 2005) (per curiam), and Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223 (11th Cir. 2007), the IJ concluded that simple threats short of physical violence were insufficient to show either past persecution or a well-founded fear of future persecution. AR at 20.

Second, the IJ found that Ocampo failed to establish a nexus between any alleged persecution and religion. Id. at 20-21. Specifically, the IJ found the case to consist "solely of an attempt to recruit her into the service of the FARC." Id. at 20. Relying on a longstanding BIA rule in Matter of R-O-, 20 I.&N. Dec. 455 (BIA 1992), the IJ found that a victim of forced recruitment, without more, is not persecuted. AR at 21. The IJ noted that the FARC members did not find something abhorrent in Ocampo, or try to prevent her from exercising her religious beliefs, but rather found something attractive in her that they could use for their own purposes. Id.

Ocampo appealed the IJ's decision to the BIA. In her brief, Ocampo again

6

asserted persecution based on religion.  Id. at 6.  She also included for the first time "membership in a particular social group," that group being "a leader of the [Catholic] [c]hurch."  Id. at 7.  She argued to the BIA that FARC members "persecuted her with the intent of silencing and killing her . . . in reprisal for her . . . participation with the Catholic Church."  Id. at 8.  The BIA affirmed, without opinion, the IJ's decision denying Ocampo's petition.  Id. at 2.

Ocampo now petitions for review.  She contends that the IJ's decision was incorrect from inception because her persecution was clearly due to political opinion.

## II. DISCUSSION

In her petition before us, Ocampo states that she seeks asylum "because in Columbia she was persecuted by the [ ] FARC due to her political opinion . . . the persecution is clearly because of the Petitioner's political opinion."  Ocampo brief at 9, 13.  In her brief before the BIA and her asylum application, however, Ocampo asserted persecution based on religion.  AR at 6, 193.

We review our subject matter jurisdiction de novo.  See Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003) (per curiam).  The exhaustion requirement applicable to immigration cases is found in 8 U.S.C. § 1252(d)(1), which provides that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien

7

as of right." We have interpreted that requirement to be jurisdictional, so we lack jurisdiction to consider claims that have not been raised before the BIA. Sundar v. U.S. Att'y Gen., 328 F.3d 1320, 1323 (11th Cir. 2003) *citing* Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001) (holding that because of § 1251(d)(1) we lack jurisdiction to review a claim the petitioner does not raise in his appeal to the BIA). Moreover, any argument not advanced in a party's initial brief is abandoned. Sepulveda, 401 F.3d at 1228 n.2.

Ocampo argues a political opinion theory on appeal, but she did not present that theory to either the IJ or the BIA during the administrative proceedings. Therefore, Ocampo has not exhausted her administrative remedies and we lack jurisdiction to consider her claim based on political opinion. See Sundar, 328 F.3d at 1323. The theory Ocampo did rely on, religion, is abandoned because she did not assert that theory on appeal. See Sepulveda, 401 F.3d at 1228 n.2. Ocampo's petition for review is therefore dismissed and we need not address the government's arguments related to the IJ and BIA's credibility findings being supported by substantial evidence.

### III. CONCLUSION

We AFFIRM the BIA's denial of asylum, withholding of removal, and CAT relief. The petition for review before us argues a political opinion theory on appeal not exhausted during the administrative proceedings before the IJ or BIA.

8

Accordignly, we DENY the petition for review.

**PETITION DENIED.**